## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

| | |
|---|---|
| United States of America, | Case No. 24-cr-61 (JRT/ECW) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Andrew David Munsinger, | |
| Defendant. | |

---

This matter is before the Court on Defendant Andrew David Munsinger's Motion to Suppress Evidence Obtained from Search Warrant Dated August 4, 2023 (Dkt. 34) and Defendant Andrew David Munsinger's Motion to Dismiss Counts 1 & 2 (Dkt. 35).

This case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Defendant Andrew David Munsinger ("Munsinger") is charged by Indictment with one count of Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8); one count of Felon in Possession of Ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8); and one count of Possession With Intent to Distribute Marihuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D).  (Dkt 14.)

On July 30, 2024, the Court held a hearing on the Motions.  (Dkt. 41.)  Benjamin Bejar, Assistant U.S. Attorney, appeared on behalf of the Government, and Aaron Morrison appeared on behalf of Munsinger, who was present at the hearing.  (*Id.*)  As to

the Motion to Dismiss, the parties notified the Court at the hearing that the Supreme Court had remanded *United States v. Jackson*, 69 F.4th 495 (8th Cir. 2023) ("*Jackson I*"), back to the Eighth Circuit in light of its decision in *United States v. Rahimi*, No. 22-915 (U.S. June 21, 2024), where *Rahimi* addressed the constitutionality of the statute prohibiting certain categories of persons from lawfully possessing a firearm or ammunition, 18 USC § 922(g). The Court gave Munsinger until August 12, 2024 to file a supplemental brief with respect to the Motion to Dismiss in light of *Rahimi*, and the Government until August 19, 2024 to file a responsive supplemental brief. On August 8, 2024, the Government sent an email to the Court notifying it that the Eighth Circuit had reaffirmed *Jackson I* that day. Munsinger filed a supplemental brief addressing *Rahimi* and the Motion to Dismiss on August 9, 2024. (Dkt. 43.) On August 19, 2024, the Government filed a supplemental brief essentially repeating the statements in its August 8 email. (Dkt. 44.) The Motions are now ripe for decision, and the Court makes its recommendation based on the publicly filed docket entries.

## II.    ANALYSIS

### A.    Motion to Suppress

Munsinger seeks to suppress evidence involving the historical location data of a cellphone seized as the result of a Search Warrant issued by the undersigned on August 4, 2023.[1] (Dkt. 34.)

---

[1]     Munsinger has not objected to the undersigned Magistrate Judge, who signed the August 4, 2023 Search Warrant, reviewing the Application and Search Warrant and making a recommendation as to suppression. In any event, "[t]he Eighth Circuit has rejected [] arguments that judicial officers who issue search warrants must recuse

1.      **Legal Standard**

Ordinarily, searches pursuant to a warrant are reviewed to determine if the application and affidavit set forth probable cause for the search. *See Illinois v. Gates*, 462 U.S. 213, 236 (1983).  A search warrant supported by probable cause is required for cellular location information. *See Carpenter v. United States*, 585 U.S. 296, 317-19 (2018); *see also United States v. Thompson*, 976 F.3d 815, 822-23 (8th Cir. 2020). "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." *United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir. 2000) (citing *Gates*, 462 U.S. at 238).  The task of a court issuing a search warrant is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238.

"Probable cause is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act.'" *United States v. Colbert*, 605 F.3d 573, 576 (8th Cir. 2010) (quoting *Gates*, 462 U.S. at 231).  In reviewing the decision of the issuing court, the duty of the

themselves from further proceedings regarding those warrants simply because suppression of evidence obtained thereby 'would require the judge's initial decision to be overruled.'" *United States v. Mathis*, No. 18CR181DWFLIB, 2018 WL 4473529, at *10-11 (D. Minn. July 17, 2018) (quoting *United States v. Jones*, 801 F.2d 304, 312 (8th Cir. 1986)), *R. & R. adopted*, 2018 WL 4062741 (D. Minn. Aug. 27, 2018).

reviewing court is simply to ensure that the court had a substantial basis for concluding that probable cause existed.  *See Gates*, 462 U.S. at 238-39 (citation omitted); *see also United States v. LaMorie*, 100 F.3d 547, 552 (8th Cir. 1996) (citation omitted) ("Our duty as a reviewing court is to ensure that the issuing judge had a 'substantial basis' for concluding that probable cause existed, and we owe substantial deference to the determination of probable cause by the issuing judge.").  "Judges may draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a search warrant . . . .'"  *See United States v. Keele*, 589 F.3d 940, 944 (8th Cir. 2009) (quoting *United States v. Alexander*, 574 F.3d 484, 490 (8th Cir. 2009), quoting *United States v. Summage*, 481 F.3d 1075, 1078 (8th Cir. 2007)).

As to what this Court should consider when reviewing a search warrant for probable cause, "[w]hen the [issuing judge] relied solely on the affidavit presented to [her], 'only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'"  *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (citing *United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir. 1999), quoting *United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995)); *United States v. Smith*, 581 F.3d 692, 694 (8th Cir. 2009) (quoting *United States v. Reivich*, 793 F.2d 957, 959 (8th Cir. 1986)).

The proponent of a suppression motion on the basis of a Fourth Amendment violation bears "the burden of establishing that his . . . Fourth Amendment rights were violated by the challenged search or seizure."  *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978).

4

2.      **Whether Probable Cause Supports the August 4, 2023 Search Warrant**

On August 4, 2023, Special Agent Jason Bujold ("SA Bujold") with the Federal Bureau of Investigation ("FBI") applied for a search warrant for cell-site location information related to a cellphone that was likely to constitute evidence of Munsinger's violations of 18 U.S.C. § 922(g) and related offenses.  (Dkt. 39-1 (Gov't Ex. 1) at ¶¶ 5, 14.)  The affidavit stated that the cell-site location information was likely to provide evidence of the location of Munsinger's friend's residence where Munsinger stored his firearms and routinely went to shoot firearms.  (*Id.*)

The basis for the issuance of the search warrant included the following:

- SA Bujold received information from a Confidential Human Source ("CHS-1") who had provided reliable information to law enforcement in the past, that during a meet and greet for new members of the Aryan Freedom Network ("AFN"), a white supremacist group, Munsinger introduced himself as "Thor" from Minnesota.

- Munsinger described himself to the CHS-1 as a felon who had previously been in prison for five years for narcotics trafficking.  Munsinger also stated that he was a "huge gun guy" who possessed a few assault rifles "ARs" and handguns; had access to a machine shop to make firearm parts "like silencers"; and boasted that the machine shop could make firearm parts that are not tracked with serial numbers or tax stamps.

- During the AFN meet and greet, members discussed upcoming meetings and trainings.  Munsinger was particularly excited for firearms training and asked what firearms he could bring to the training.

- Munsinger provided his phone number to CHS-1, as 507-430-XXXX ("Subject Phone").  Public database searches conducted by the FBI identified the Subject Phone as being registered to Munsinger.

- CHS-1 was able to identify unlabeled photographs of Munsinger as the person who introduced himself as Thor at the AFN meet and greet in February 2023.

- SA Bujold reviewed Munsinger's criminal history, which includes a September 2007 felony conviction for possession of drugs (25 grams or more of

cocaine/heroin/meth), and a September 2009 felony conviction for the sale of narcotics, in violation of Minnesota statutes.

- In April 2023, Munsinger and CHS-1 both attended AFN firearms training in Indiana. According to CHS-1, Munsinger brought a homemade rifle, an AK variant assault rifle using .308-sized ammunition (with three magazines), to the firearms training and mentioned having a handgun in the vehicle he drove to the training. Munsinger also mentioned that he possessed firearm suppressors and that he had made firearm suppressors in the past. Munsinger did not mention his status as a convicted felon to others, but another member of AFN knew of Munsinger's status as a felon and became upset at his participation in the firearms training. Munsinger was no longer allowed to participate in firearms training.

- In May 2023, Munsinger attended another AFN event with CHS-1. The event was audio recorded by CHS-1. During the event, Munsinger described his knowledge that he is a felon, that he is prohibited from possessing firearms, that he knows the consequences for the possession of firearms, and that he tries to hide his possession of firearms. He also detailed attending a gun show in Minnesota and shooting a firearm at the gun show.

- In May 2023, CHS-1 introduced Munsinger to Confidential Human Source-2 ("CHS-2"), who has provided reliable information to the FBI in the past, via the Subject Phone. During the introduction, Munsinger texted CHS-2, "I would be the one [CHS-1] calls Thor." After that, CHS-2 and Munsinger participated in phone calls. During the phone calls, Munsinger acknowledged that he shoots firearms on his friend's land; served approximately 74 months in prison in approximately 2006 for methamphetamines; built several firearms in the past; and his friend owns a machine shop and that Munsinger has built guns there.

- In June 2023, Munsinger traveled to attend another AFN event with CHS-1. During the event, Munsinger told CHS-1 that he stores his collection of firearms at his friend's house for security reasons. Munsinger told CHS-1 that he can make suppressors and would be willing to make a suppressor for CHS-1. Munsinger also discussed his desire to manufacture a fully automatic, 9 mm AR pistol for himself.

- In July 2023, Munsinger met with CHS-2. The meeting was partially audio and video recorded. During the meeting, Munsinger confirmed he builds AR-10s. CHS-2 asked if Munsinger could build CHS-2 an AR-10 in exchange for a forced reset trigger, to which Munsinger replied, "I can. Yes." During the meeting, Munsinger also discussed his desire to obtain a fully automatic Five Seven handgun with extended magazines, and indicated that he possessed 10,000 rounds of ammunition.

- During this interaction, Munsinger and CHS-2 discussed going to shoot on Munsinger's friend's land, with Munsinger stating that he shoots at his friend's place.

- CHS-2 also observed Munsinger using an older cellphone, commonly referred to as a flip phone. Munsinger told CHS-2 that he pays cash for the phone to not leave a paper trial. He also stated he carried the phone with him in his truck when he drives and that the phone usually stays in the truck.

- The Subject Phone utilizes Verizon's cellular towers and that information at issue is likely to be stored by Verizon, and that the carrier of the Subject Phone is Total by Verizon, which is characterized by Verizon as its prepaid retail brand. Publicly available information available on Verizon's website refers to Verizon's recent acquisition of TracFone.

- Records obtained from TracFone Wireless related to the Subject Phone showed the email account listed for the SUBJECT PHONE as andrewmunsinger@gmail.com and the city listed for the SUBJECT PHONE as Redwood Falls, Minnesota, which SA Bujold knew to be the city where Munsinger's residence was located. The customer information listed a random number for the first and last name of the subscriber, which SA Bujold said appeared to be an effort to obscure the subscriber's identity.

- Verizon obtains and collects cell-site data, and per call measurement data, which Verizon also refers to as the "real-time tool" ("RTT") to obtain the location of cell phones using its service.

(Dkt. 39-1 ¶¶ 6-24.)[2]

SA Bujold also stated in his affidavit that: "The ability to shoot firearms would require a significant parcel of land, and your affiant knows that MUNSINGER lives in a town very close to other residents." (*Id.* at 9.)

On August 4, 2023, this Court issued the August 4, 2023 Search Warrant for the subject phone with respect to data in Verizon's possession, which included ordering the seizure of information regarding the cell tower and antenna face through which

---

[2]     Page citations to materials filed on the docket are to the CM/ECF pagination.

communications were sent and received, as well as RTT data, that constituted evidence and instrumentalities of § 922(g) and related offenses by Munsinger. (*Id.* at 16-18.) The information to be seized was limited to between February 1, 2023 to the then-present date in August 2023. (*Id.* at 17.)

Munsinger argues that the Affidavit failed to establish the requisite link between its probable-cause presentation and the particular location selected for the search—his phone location history. (Dkt. 34 at 2.) Specifically, Munsinger contends:

> Here, the affidavit arguably supplies an explanation that Mr. Munsinger may have possessed a firearm while he was a prohibited person, but it fails to supply the requisite additional evidence linking his phone location history to the suspected criminal activity. *Roach*, 582 F.3d at 1202. Instead, even viewing the allegations in favor of the affiant's view of the facts, the affidavit essentially says that because Mr. Munsinger lives in a town, he must have traveled somewhere to shoot his firearm. The fact that he may have traveled somewhere in the past where he arguably could have shot a firearm, does not provide evidence that he in fact shot a firearm at that location. In this instance there is simply no nexus between the historical cell phone location information being sought and evidence that supports a finding that Mr. Munsinger violated the law.

(*Id.* at 3.)

Munsinger does not dispute the Affidavit's assertion that he had a felony record, which under § 922 would make it a crime (assuming its constitutionality, *see infra* Section II.B) if he were to possess firearms or ammunition. In addition, the Affidavit provides extensive evidence from multiple reliable informants, partially corroborated by recordings, regarding Munsinger, from February 2023 through July 2023. This included Munsinger claiming that he possessed a few assault rifles; had access to a machine shop to make silencers and other firearms parts that are not tracked, and engaged in firearms

training.  (Dkt. 39-1 at 4-5.)  It also included CHS-1's statements that Munsinger brought a homemade assault rifle with ammunition to a firearms training session and claimed to have a firearm in the vehicle he drove to that training.  (*Id.* at 5.)

As to the nexus between Munsinger's phone's location data and evidence of violations of § 922(g) and related offenses, the Affidavit also included Munsinger's admission that he attempted to hide his possession of firearms, his claim that he had attended a gun show and fired a gun during the event.  (*Id.* at 6.)  The evidence also included Munsinger's statements that he builds firearms, including assault rifles; his offers to make suppressors and an assault rifle for others; his discussion about making a pistol for himself and shooting; and his claim to have 10,000 rounds of ammunition.  (*Id.* at 7-8.)  Further, the CHS-1 provided law enforcement the phone number he obtained from "Thor," which was listed to Munsinger and was the number associated with the subject phone, and the CHS-1 confirmed that the photo of Munsinger provided by law enforcement was "Thor."  (*Id.* at 4-5.)  Finally, the evidence included Munsinger's statements that he shoots firearms on his friend's land, that he stored his collection of firearms at his friend's house for security reasons, and that he carried the subject phone with him in his truck when he drove and the phone usually stayed in the truck, along with Munsinger's discussion with CHS-2 about going to Munsinger's friend's land to shoot. (*Id.* at 6, 8.)

"The very purpose of tracking data is to monitor the movements of an individual suspected of criminal activity, in order to pinpoint the particular place where the individual is carrying out the suspected activity."  *United States v. Thompson*, No. CR 18-

180 (PAM/KMM), 2019 WL 1075886, at *2 (D. Minn. Mar. 7, 2019), aff'd, 976 F.3d 815 (8th Cir. 2020). Here, the cell phone tracking data monitored Munsinger's movements to determine the place where he was shooting and storing firearms—his friend's residence—based on his statements that he carried the phone with him in his truck when driving. Munsinger argues that the fact that the Affidavit claims that he shot a gun at a location does not mean that he shot a firearm at the location. (Dkt. 34 at 3.) However, "search warrants address probabilities not certainties, and therefore, the 'affidavit need only establish the probability of criminal activity' rather than proof beyond a reasonable doubt." *United States v. Chen*, No. 21-CR-250 (JRT/TNL), 2023 WL 3719467, at *6 (D. Minn. Mar. 9, 2023) (quoting *United States v. Brown*, 584 F.2d 252, 257 (8th Cir. 1978), *R. & R. adopted*, 2023 WL 3597904 (D. Minn. May 23, 2023) (cleaned up). Here, the Affidavit contained enough information to show that it was likely that the cell location information from the subject phone that Munsinger keeps in his vehicle and drives around with would show where evidence of his possession of firearms would be located. The Court therefore recommends denial of the Motion to Suppress.

### 3. *Leon* Exception

Because the Search Warrant for the subject phone was supported by probable cause (as set forth above), this Court need not determine whether the good-faith exception set forth in *United States v. Leon*, 468 U.S. 897 (1984), should apply. The Court notes, however, that even if the Search Warrant was deficient, law enforcement's reliance on it would have been reasonable under *Leon*.

Under *Leon*, "evidence seized pursuant to a search warrant issued by a [judge] that is later determined to be invalid[ ] will not be suppressed if the executing officer's reliance upon the warrant was objectively reasonable." *United States v. Houston*, 665 F.3d 991, 994 (8th Cir. 2012) (quoting *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007)). In *Leon*, the court stated that "'searches pursuant to a warrant will rarely require any deep inquiry into reasonableness,' for 'a warrant issued by a magistrate [judge] normally suffices to establish' that a law enforcement officer has 'acted in good faith in conducting the search.'" 468 U.S. at 922 (citations omitted). However, the *Leon* court noted that there are certain instances when "the purpose of the exclusionary rule—deterring police misconduct—will not be served by suppressing illegally seized evidence." *United States v. Martin*, 833 F.2d 752, 755 (8th Cir. 1987); *Leon*, 468 U.S. at 922-23. "When a police officer acts in an objectively reasonable manner in reliance on a subsequently invalidated search warrant, there is no rational reason for suppressing the fruits of the search." *Martin*, 833 F.2d at 755. The Court's "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate [judge]'s authorization." *Leon*, 468 U.S. at 923 n.23.

However, evidence obtained as a result of an unconstitutional search should be suppressed under the following circumstances:

i.   when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge;

11

     ii.     when the issuing judge "wholly abandoned [her] judicial role" in issuing the warrant;

    iii.     when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and

    iv.     when the warrant is "so facially deficient" that no police officer could  reasonably presume the warrant to be valid.

*Houston*, 665 F.3d at 995 (quoting *Proell*, 485 F.3d at 431).  With respect to the third exception, the Eighth Circuit has explained: "'Entirely unreasonable' is not a phrase often used by the Supreme Court, and we find nothing in *Leon* or in the Court's subsequent opinions that would justify our dilution of the Court's particularly strong choice of words."  *Proell*, 485 F.3d at 432 (quoting *Carpenter*, 341 F.3d at 670).

     Here, the Court does not find that the Application was intentionally or recklessly misleading (nor does Munsinger make this argument), or that the issuing judge wholly abandoned her judicial role in issuing the Search Warrant.  As to the remaining exceptions, the Court has already concluded that the Affidavit provided an adequate factual basis to have found probable cause.  Therefore, based on all the facts and circumstances of this case, it was not "entirely unreasonable" for law enforcement officers to rely on this Court's issuance of the August 4, 2023 Search Warrant.

     This provides an independent basis for recommending denial of Munsinger's Motions to Suppress.

## B.    Motion to Dismiss

     Munsinger seeks dismissal of the Indictment on the grounds that the statute he is charged under, 18 U.S.C. § 922(g)(1), is unconstitutional facially and as applied to him in

violation of the Second Amendment in light of the United States Supreme Court's decision in *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). (Dkt. 35 at 1; Dkt. 43 at 2-3.) The Government opposes dismissal because the Eighth Circuit has already rejected this argument. (Dkt. 39 at 10-12; *see also* Dkt. 44.)

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear arms shall not be infringed." U.S. Const. amend. II. The *Bruen* court adopted the following test for determining whether a government regulation of firearms is permissible:

> [W]e hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."
> 142 S. Ct. at 2126 (footnote omitted) (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)).

142 S. Ct. at 2126.

Here, Munsinger argues that merely having a felony record was never among the reasonable, well-defined bases permitting the disarming of persons in this country's historical tradition of regulating firearms. (Dkt. 35 at 5-7.) In *United States v. Jackson*, the Eighth Circuit addressed similar arguments post-*Bruen*, finding that "legislatures traditionally employed status-based restrictions to disqualify categories of persons from possessing firearms," and concluding that "Congress acted within the historical tradition when it enacted § 922(g)(1) and the prohibition on possession of firearms by felons."

*Jackson I*, 69 F.4th at 505.  For this reason, the Eighth Circuit affirmed the denial of a motion to dismiss an indictment based on the argument that § 922(g)(1) was unconstitutional as applied to the defendant "because his drug offenses were 'non-violent' and do not show that he is more dangerous than the typical law-abiding citizen." *Id.* at 501-05.  The Eighth Circuit subsequently denied a petition for *en banc* rehearing and for panel rehearing of *Jackson*.  *See United States v. Jackson*, No. 22-2870, 2023 WL 5605618, at *1 (8th Cir. Aug. 30, 2023).

On July 2, 2024, *Jackson I* was vacated by the United States Supreme Court for further consideration by the Eighth Circuit, in light of is decision in *United States v. Rahimi*, 601 U.S. ----, 144 S. Ct. 1889 (2024).  *See Jackson v. United States*, No. 23-6170, 2024 WL 3259675, at *1 (U.S. July 2, 2024).  In *Rahimi*, the Supreme Court found that 18 U.S.C. § 922(g)(8), the federal prohibition on possession of a firearm while subject to a domestic violence restraining order, is constitutional on its face.  602 U.S. at ---, 144 S. Ct. at 1902.

On August 8, 2024, the Eighth Circuit addressed the effect of the *Rahimi* decision on *Jackson I*.  *See United States v. Jackson*, No. 22-2870, --- F.4th ----, 2024 WL 3711155, at *3 (8th Cir. Aug. 8, 2024) ("*Jackson II*").  Specifically, the Eighth Circuit found:

> The Court in *Rahimi* did "not suggest that the Second Amendment prohibits the enactment of laws banning the possession of guns by categories of persons thought by a legislature to present a special danger of misuse." 144 S. Ct. at 1901 (citing [*D.C. v. Heller*, 554 U.S. 570, 626 (2008)]). In fact, the Court referred back to its statement in *Heller* that prohibitions on the possession of firearms by felons are presumptively lawful. *Id.* at 1902.

*Id.* at *7.

While Munsinger argues that the non-violent drug felonies underlying the felon in possession counts in the Indictment make § 922(g)(1) unconstitutional as applied to him, the Eighth Circuit rejected similar arguments made by a defendant regarding his "non-violent" drug offenses, holding: "Consistent with the Supreme Court's assurances that recent decisions on the Second Amendment cast no doubt on the constitutionality of laws prohibiting the possession of firearms by felons, . . . the statute is constitutional as applied to Jackson.  The district court properly denied the motion to dismiss the indictment." *Id.* at *4, 7.

Munsinger points to the decision of the Ninth Circuit in support of his position. (Dkt. 43 at 4.)  However, this "District Court . . . is bound . . . to apply the precedent of this Circuit." *Hood v. United States*, 342 F.3d 861, 864 (8th Cir. 2003) (citation omitted). *Jackson II* is dispositive of Munsinger's challenge to the constitutionality of § 922(g)(1). For these reasons, based on current Eighth Circuit precedent, the Court recommends denial of Munsinger's Second Amendment-based Motion to Dismiss.

## IV.    RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS RECOMMENDED THAT:**

1.    Defendant Andrew David Munsinger's Motion to Suppress Evidence Obtained from Search Warrant Dated August 4, 2023 (Dkt. 34) be **DENIED**; and

2.    Defendant Andrew David Munsinger's Motion to Dismiss Counts 1 & 2 (Dkt. 35) be **DENIED**.

15

DATED: September 18, 2024        _s/Elizabeth Cowan Wright_
                                   ELIZABETH COWAN WRIGHT
                                   United States Magistrate Judge

## **NOTICE**

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).