UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

UNITED STATES OF AMERICA,

                           Plaintiff,

v.

ANDREW DAVID MUNSINGER,

                           Defendant.

Criminal No. 24-61 (JRT/ECW)

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION**

---

Benjamin Bejar, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Plaintiff.

Aaron J. Morrison, **OFFICE OF THE FEDERAL DEFENDER**, 300 South Fourth Street, Suite 107, Minneapolis, MN 55415, for Defendant.

Defendant Andrew David Munsinger has been indicted by a grand jury for the crimes of being a felon in possession of firearms, being a felon in possession of ammunition and possession with intent to distribute marijuana. He now seeks to suppress historical cell-site location information from a cell phone obtained pursuant to an allegedly defective search warrant and to dismiss Counts 1 and 2 of the Indictment as unconstitutional under the Second Amendment. Magistrate Judge Elizabeth Cowan Wright issued a report and recommendation ("R&R") recommending denying both of Munsinger's motions. Munsinger objected to the R&R. Because the warrant sufficiently linked the historical cell-site location information to the alleged illegal conduct and Counts 1 and 2 were not charged under an unconstitutional statute, the Court will overrule

Munsinger's objections, adopt the R&R, and deny Munsinger's motion to suppress and motion to dismiss.

## BACKGROUND

Because the R&R explains the factual and procedural background and neither party objects, the Court will incorporate it here by reference. (*See* R. & R. at 1–2, 5–8, Sept. 18, 2024, Docket No. 46.) The Court will thus only briefly describe the relevant background.

After investigating allegations against Munsinger for several months, Special Agent Jason Bujold with the Federal Bureau of Investigation ("FBI") applied for a search warrant to obtain the historical cell-site location information ("CSLI") of one of Munsinger's phones (the "Subject Phone") seeking information about the location where Munsinger allegedly possessed firearms and ammunition. (Pl.'s Resp. at 2, Ex. 1 ("Aff.") ¶¶ 1, 4–5, June 28, 2024, Docket No. 39.)

Bujold's investigation began when a reliable Confidential Human Source ("CHS-1") alerted the FBI to possible illegal conduct by Munsinger. (Aff. ¶ 6.) CHS-1 met Munsinger at an Aryan Freedom Network ("AFN") event, where Munsinger labeled himself a "gun guy" with a criminal history who had served five years in prison for drug related offenses. (*Id.* ¶ 7.) Munsinger disclosed that he possessed several guns and had access to a machine shop to make additional firearm parts. (*Id.*) Over a series of AFN events and firearms trainings, CHS-1 became aware that Munsinger stored firearms at a friend's property in an effort to conceal his possession as a prohibited person. (*Id.* ¶¶ 12, 14.) CHS-1 and

Munsinger also discussed the possibility of Munsinger manufacturing firearm components for CHS-1 and Munsinger's experience with explosives. (*Id.* ¶ 15.)

Munsinger provided CHS-1 with his phone number, matching the number of the Subject Phone, and introduced himself to CHS-1 as "Thor." (*Id.* ¶ 7.) CHS-1 later identified Munsinger as the individual who introduced himself as "Thor" in unlabeled photographs. (*Id.* ¶ 9.) CHS-1 further described Munsinger as arriving at meetings in a Chevrolet Silverado. (*Id.* ¶ 8.)

Bujold determined that the Subject Phone's number was registered to Munsinger, and operated by Verizon, and that Munsinger had a Chevrolet Silverado registered to him. (*Id.*) Bujold independently corroborated that Munsinger had two felony convictions making him ineligible to possess firearms. (*Id.* ¶ 9.)

Bujold also received information from a second reliable Confidential Human Source ("CHS-2"). CHS-1 introduced CHS-2 to Munsinger through the Subject Phone. (*Id.* ¶ 13.) Munsinger disclosed to CHS-2 that he shoots firearms on a friend's property, that he previously served just over six years in prison, and that he has built several firearms at a friend's machine shop. (*Id.*) CHS-2 also observed Munsinger using the Subject Phone, and Munsinger admitted that he uses the Subject Phone, a flip phone he paid cash for, to avoid detection and that he typically keeps the Subject Phone in his Chevrolet Silverado. (*Id.* ¶ 18.) CHS-2 and Munsinger also discussed shooting together on Munsinger's friend's land. (*Id.* ¶ 17.)

Based on the above information and more, Bujold sought a search warrant for the CSLI from the Subject Phone, seeking evidence of the location of property where Munsinger stores his firearms and routinely goes shooting. (*Id.* ¶¶ 5, 14, 27.) Finding probable cause, the Magistrate Judge issued the search warrant. (*Id.* at 18.) Subsequently, a grand jury indicted Munsinger on charges of Felon in Possession of Firearms, Felon in Possession of Ammunition, and Possession with Intent to Distribute Marijuana. (Indictment at 1–3, Mar. 6, 2024, Docket No. 14.)

Munsinger filed both a motion to suppress and a motion to dismiss Counts 1 and 2 of the Indictment. (Mot. Suppress, June 14, 2024, Docket No. 34; Mot Dismiss, June 14, 2024, Docket No. 35.) Munsinger argued that the CSLI evidence should be suppressed because the affidavit lacked probable cause in that it failed to sufficiently link the CSLI evidence to any alleged criminal conduct. (Mot. Suppress at 2–3.) Munsinger further argued that Counts 1 and 2 of the Indictment should be dismissed because 18 U.S.C. § 922(g) is unconstitutional, as there is no historical tradition of regulating firearm possession by felons and even the first such restriction only focused on those with violent felonious pasts. (Mot. Dismiss at 5–7.)

The Magistrate Judge issued an R&R recommending that the Court deny both Munsinger's motion to suppress and motion to dismiss Counts 1 and 2. (R. & R. at 15.) Munsinger objected to the R&R resting on arguments raised in prior briefing. (Def.'s Obj., Oct. 2, 2024, Docket No. 47.)

## DISCUSSION

**I.  STANDARD OF REVIEW**

After a magistrate judge files an R&R, a party may "serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b). "The objections should specify the portions of the magistrate judge's report and recommendation to which objections are made and provide a basis for those objections." *Mayer v. Walvatne*, No. 07-1958, 2008 WL 4527774, at *2 (D. Minn. Sept. 28, 2008). For dispositive motions, the Court reviews de novo a "properly objected to" portion of an R&R. Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3). Sometimes courts review general and conclusory objections for clear error. *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). The Eighth Circuit instructs that clear error is appropriate when general and conclusory objections "make it difficult for the district court to focus upon the alleged errors if insufficiently directed by the parties." *Id.* Because the Court can determine which portions of the R&R Munsinger objects to based on previous briefing, it will conduct de novo review. *See, e.g.*, *Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995).

**II.  MOTION TO SUPPRESS**

Munsinger argues that the CSLI evidence should be suppressed because the affidavit failed to sufficiently link the CSLI evidence to the suspected criminal activity, namely possession of firearms and ammunition by a prohibited person. Additionally, Munsinger argues that the evidence cannot be salvaged by the good faith exception

because the affidavit contained no connection between the CSLI evidence and alleged criminal activity, so it was obviously deficient.

A search warrant can only be issued when the affidavit presents evidence of sufficient nexus between the crime and the place to be searched. *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008). Courts consider the "nature of the crime and the reasonable, logical likelihood of finding useful evidence" in determining whether a nexus exists. *United States v. Johnson*, 848 F.3d 872, 878 (8th Cir. 2017) (quotation omitted).

Courts have struggled to specifically define what type of nexus is sufficient when law enforcement seeks a warrant for cell phone location data. *See, e.g.*, *United States v. Sheckles*, 996 F.3d 330, 338–40 (6th Cir. 2021) (questioning whether nexus requires that the location data will aid in an investigation and "disclose evidence of criminal activity" or if it must show that there was a fair probability that the phone itself is being used "in connection with criminal activity"). While the Eighth Circuit has not clarified how to apply the sufficient nexus test to cell phone location data, several courts in the District of Minnesota have used the more lenient disclose-evidence standard. *United States v. Eason*, No. 24-121, 2024 WL 4491567, at *2 (D. Minn. Oct. 15, 2024) (collecting cases); *accord United States v. Gibbs*, 547 F. App'x 174, 179 (4th Cir. 2013) (finding sufficient probable cause when location monitoring was likely to reveal, among other things, the location of illegal possession).

The Court will find that there need only be a fair probability that the location data will aid in the investigation and disclose evidence of criminal activity. Such a reading is supported by the Supreme Court's guidance that seizures may extend beyond instrumentalities of a crime to "mere evidence" of that crime. *See Warden v. Hayden*, 387 U.S. 294, 307 (1967).

Here, the affidavit presented information that Munsinger stored and used guns at locations that were not his residence in an effort to conceal illegal activity, and that the Subject Phone typically remained in his vehicle. The affidavit corroborated the fact that the Subject Phone and the vehicle belonged to Munsinger and that Munsinger's residence would not provide sufficient land to shoot firearms. Munsinger admitted to CHS-2 that he paid cash for the Subject Phone to avoid detection. Additionally, CHS-2 discussed going to shoot on Munsinger's friend's land the month before the warrant was issued. Because there was a fair probability that evidence of any location Munsinger visited with the Subject Phone would provide evidence of where he illegally possessed these firearms, the Court finds the warrant provided a sufficient nexus between the crime and the Subject Phone's location data.

Yet even if the warrant insufficiently connected the CSLI evidence to the commission of a crime, the good faith exception applies. Evidence obtained in executing a defective search warrant will not be excluded if the officer acted in good faith in relying on the warrant and that this reliance was objectively reasonable. *United States v. Leon*,

468 U.S. 897, 922 (1984). Munsinger argues that because the affidavit was devoid of any connection between the CSLI evidence and the alleged criminal conduct, any officer would have obviously viewed the warrant as deficient. However, as presented above, the warrant did reasonably connect the CSLI to the alleged criminal activity. The affidavit described that the Subject Phone's location would likely reveal Munsinger's clandestine firearm storage because the Subject Phone remained in the vehicle, which he drove to the firearm storage locations. Thus, even if the warrant was invalid, the good faith exception independently saves the CSLI evidence from suppression.

### III.   MOTION TO DISMISS

In seeking dismissal of Counts 1 and 2 of the Indictment, Munsinger argues that prohibiting him from possessing firearms and ammunition under 18 U.S.C. § 922(g) violates the Second Amendment of the U.S. Constitution. However, the Eighth Circuit has answered this question in *United States v. Jackson*. 110 F.4th 1120, 1126–29 (8th Cir. 2024). The felon in possession statute is constitutional even when the predicate felonies are non-violent felonies. Therefore, the Court will not dismiss Counts 1 and 2 of the Indictment.

### CONCLUSION

The affidavit in support of the search warrant for the CSLI evidence sufficiently linked the data to alleged criminal conduct. In addition, the charging statute does not unconstitutionally interfere with Munsinger's Second Amendment rights. The Court

therefore will overrule the objections, adopt the R&R, and deny the motion to suppress and the motion to dismiss.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Objections to the Report and Recommendation [Docket No. 47] are **OVERRULED**;

2. The Report and Recommendation [Docket No. 46] is **ADOPTED**;

3. Defendant's Motion to Suppress [Docket No. 34] is **DENIED**; and

4. Defendant's Motion to Dismiss [Docket No. 35] is **DENIED**.


DATED:  December 5, 2024                      _____s/John R. Tunheim_____
at Minneapolis, Minnesota.                            JOHN R. TUNHEIM
                                                United States District Judge