UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 24-61 (JRT/ECW)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) GOVERNMENT'S |
| v. | ) SUPPLEMENTAL BRIEF IN |
| | ) SUPPORT OF ITS MOTION IN |
| ANDREW DAVID MUNSINGER, | ) LIMINE TO PRECLUDE |
| | ) ENTRAPMENT DEFENSE |
| Defendant. | ) |

The United States of America, by and through its undersigned attorneys, hereby respectfully submits this supplemental briefing in support of its motion in limine to preclude an entrapment defense. *See* ECF No. 67. The Court should preclude the defendant from asserting an entrapment defense at trial because the defendant has not, and cannot, proffer sufficient evidence that could, even in the light most favorable to the defendant, support such a defense.

The affirmative entrapment defense has two "related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in criminal conduct." *United States v. Wynn*, 827 F.3d 778, 786 (8th Cir. 2016) (quotation omitted). "Inducement occurs when the government creates a substantial risk that an *otherwise law abiding person* will commit a criminal offense." *United States v. Warren*, 788 F.3d 805, 810

(8th Cir. 2015) (emphasis added). Accordingly, when a defendant is already committing the crime before any conduct by a government agent, it is not possible for the defendant to make a prima facie showing of inducement.

Here, the defendant's own words and acts show that he possessed firearms and ammunition before he ever met the CHS. On a May 20, 2023 audio-recording, the defendant described to the CHS how he previously attended a gun show in Minnesota, where you can "shoot sh*t for free . . ." The defendant explained, "So you come up there and they have like all, all the vendors will be up there with their booths and there'll be racks of guns. Boom. I want to shoot this gun. And they'll give you ammunition. You go out to the range, let's shoot it." The defendant explained that he had attended the gun show *before* speaking with the CHS: He told the CHS that at the gun show he shot a "50 cal. muzzle loader," and also discussed "a silenced fully automatic .22 that I shot." *See United States v. Young*, 613 F.3d 735, 747 (8th Cir. 2010) (if a defendant "exhibits *any* predisposition to engage in the criminal conduct, the district court need not instruct the jury on entrapment" (emphasis added).

Moreover, the defendant admitted to the CHS that he built and possessed his two personally made semi-automatic rifles, i.e., ghost guns, an AR-10 and an AR-15 (with a Bear Creek Arsenal stamped receiver) before he met the CHS; the same two firearms that the defendant is seen on video-recording loading with ammunition and firing at a gun range where the

defendant had a paid membership. Simply because the government cannot establish interstate nexus for these unserialized firearms does not make these firearms any less probative of the defendant's predisposition to possess firearms as a felon. And information from the defendant's laptop seized during the February 7 search of his residence shows that the defendant had an actual customer account with Bear Creek Arsenal well before he met the CHS as depicted below.

| Record 4 | |
|---|---|
| Tags | CART Tags |
| User Name | Munsinger |
| Password | <Encrypted Data> |
| Created Date/Time - UTC+00:00 (M/d/yyyy) | 5/26/2021 10:21:03 PM |
| URL | https://www.bearcreekarsenal.com/customer/account/create/ |
| Source | • mpc005391_1b29.E01 - Partition 3 (Microsoft NTFS, 118.45 GB) Windows\Users\Andrew\AppData\Local\Microsoft\Edge\User Data\Default\Login Data |
| Location | • Table: logins(id: 5) |
| Evidence number | • mpc005391_1b29.E01 |
| Recovery method | • Parsing |
| Item ID | 849416 |

The above record extracted from the defendant's laptop shows that on May 26, 2021, the defendant created an account with Bear Creek Arsenal, an online firearms and firearm parts retailer. As noted above, Bear Creek Arsenal is the same retailer that manufactured the upper receiver on the AR-15 he shot with the CHS:



In addition, at a recorded event on December 8, 2023, the defendant told the CHS, "I got a Winchester . . . 12-gauge bird gun." Notably, one of the two shotguns located inside the defendant's Jeep Liberty at the Lake Lillian farm was a 12-gauge Winchester shotgun. Moreover, packages addressed to the defendant at his Redwood Falls residence that were found inside his Jeep Liberty (alongside the two charged shotguns) further show the defendant's predisposition to possess firearms and ammunition as a felon. One package, dated June 14, 2021, was sent by a company called "15Hanguard," which refers to an accessory placed on an AR-15 to protect the shooter's hand from the hot barrel, and which the defendant's AR-15 had. The other package, dated April

4

2022, is from an online ammunition and firearm accessories retailer called Cheaper Than Dirt:



These packages, both addressed to the defendant at his Redwood Falls address, both predate any contact between the defendant and the CHS and again show his predisposition to possess firearms as a felon.

Although the government did not charge the defendant with possession of the AR-10 and AR-15 unserialized rifles because of the interstate nexus element, they are nonetheless still firearms under federal law. *See* 18 U.S.C. § 921(a)(c) (defining firearms as "any weapon . . . which will or is designed to or may readily be converted to expel a projectile by the action of an explosive").

5

And they therefore show the defendant's predisposition to possess firearms as a felon before any involvement by the government. Moreover, the defendant's possession of these unserialized semi-automatic rifles was still a felony under Minnesota law. *See* Minn. Stat. § 609.667 (prohibiting possession of "a firearm that is not identified by a serial number"). The defendant was undeniably breaking the law when he possessed the two unserialized firearms, which precludes the defendant from being able to make a prima facie showing of inducement because of his predisposition to possess firearms as a felon.

At the pretrial conference on March 27, 2025, defense counsel proffered a text message in which the CHS asked the defendant to "bring some toys" to an AFN shooting event in Indiana. But simply asking a subject under investigation to bring *their own firearms* to a meeting cannot reasonably constitute *encouragement* within the entrapment rubric.

In any event, AFN leadership chastised the defendant for bringing his firearms to that firearms training event because of the defendant's felon status. The defendant brought his unserialized AR-10 to the event, and when the AFN leader learned that the defendant had brought a firearm, she immediately stopped the firearms training and chastised the defendant. The defendant acknowledged these events in a May 20, 2023 audio-recording with the CHS. When the CHS asked the defendant if he had been offended by the "Indiana thing," the defendant replied that he understood the AFN leader's

position: "I, yeah, that's different, It's, I totally understand where she's coming from. I know that I'm gonna do what I'm gonna do, but when I'm in the presence with everyone else, group activity, I'm a reflection. There, I have to be up to status." Far from encouragement, the CHS told the defendant that the CHS "can't tell [the defendant] what [he] can and cannot do for personal protection." These statements were made months before February 2024, when the defendant was found in possession of the two shotguns in his Jeep Liberty and the Ruger Security 9 pistol in his bedroom closet, along with hundreds of rounds of ammunition and cartridge casings.

Lastly, in a recorded jail call with his brother Steven Munsinger on July 6, 2024, the defendant expressed knowledge of the shotguns being in his Jeep Liberty at the Lake Lillian farm at the time they were seized, why they were in his Jeep Liberty, and where the shotguns had been before—again exemplifying knowing possession and predisposition to possess firearms as a felon. The defendant stated, "I mean, obviously, there's the whole reason why they were there and, the whole reason they weren't, you know, those shotguns weren't located where they were originally located at the house once, you know, dad went to the nursing home or whatever, so . . . ." These statements show that the defendant knew where the shotguns were (inside his Jeep), knew where they were before (at the house), and knew why they were inside his Jeep (because his father went to a nursing home). The defendant has not, and

7

cannot, proffer any evidence that the defendant was otherwise law-abiding and was instead induced by the CHS to possess the shotguns or the Ruger 9mm that are charged in Count 1 of the Indictment.

Although "[w]hen ruling on a pretrial motion to preclude entrapment, the district court must accept as true the defendant's proffered evidence, and not weigh the government's evidence against it," *United States v. Mercado*, 53 F.4th 1071, 1080 (7th Cir. 2022), because entrapment is an affirmative defense, the defendant "must first produce sufficient evidence that the government . . . induced him to commit the offense," *United States v. Harriman*, 970 F.3d 1048, 1057 (8th Cir. 2020). The defendant has not shown sufficient evidence to meet his burden of production that he was induced to possess firearms. Accordingly, the Court should grant the government's motion in limine to preclude the affirmative entrapment defense unless the defendant can first make the necessary prima facie showing.

Dated: March 30, 2025

Respectfully Submitted,

LISA D. KIRKPATRICK
Acting United States Attorney

BY: /s/ *Raphael B. Coburn*
RAPHAEL B. COBURN
BENJAMIN BEJAR
Assistant United States Attorneys
District of Minnesota